815 P.2d 983 (1991)
COLORADO INSURANCE GUARANTY ASSOCIATION, a nonprofit unincorporated legal entity, Plaintiff-Appellant and Cross-Appellee,
v.
Mable E. HARRIS, Defendant-Appellee and Cross-Appellant, and
Forrest E. Guthrie and Nick Keseloff, Defendants-Appellees.
No. 90CA0522.
Colorado Court of Appeals, Div. V.
April 11, 1991.
Rehearing Denied May 9, 1991.
Certiorari Granted September 9, 1991.
*984 Anstine & Hill, Jeffrey J. Richards and Ronald C. Hill, Denver, for plaintiff-appellant and cross-appellee.
Davis W. Moore, Jr., Denver, for defendant-appellee and cross-appellant.
Zupkus and Ayd, P.C., Patricia M. Ayd and J. Barton Maxwell, Denver, for defendants-appellees.
Opinion by Judge NEY.
Plaintiff, Colorado Insurance Guaranty Association (CIGA), appeals the declaratory judgment entered in favor of defendants, Mable E. Harris, Forrest E. Guthrie, and Nick Keseloff. Harris cross-appeals. We affirm.
Harris was injured when a car she was driving was struck by a vehicle owned by Keseloff and operated by Keseloff's employee, Guthrie. At the time of the accident, Keseloff and Guthrie were insured under an automobile insurance policy issued by Great Global Assurance Company, which provided liability coverage of $300,000. Harris was insured under an automobile liability insurance policy which provided uninsured motorist coverage of $25,000.
Subsequent to the accident, Great Global became insolvent, and Harris' personal injury claim against Keseloff and Guthrie was referred to CIGA, pursuant to § 10-4-508(1)(a), C.R.S. (1987 Repl.Vol. 4A). Consequently, CIGA became obligated to defend Keseloff and Guthrie.
Because of Great Global's insolvency, Harris made a claim against her own insurance carrier for $25,000, the full amount of uninsured motorist coverage under her policy. Following negotiations, and upon advice of counsel, Harris accepted $22,500 as full settlement of her uninsured motorist claim. There was uncontroverted evidence that the $22,500 amounted to more than she would have received after paying attorney fees had she litigated or arbitrated the claim and received a judgment for the full $25,000.
CIGA then sought a judicial determination of its rights and duties pursuant to the Colorado Insurance Guaranty Association Act, § 10-4-501, et seq., C.R.S. (1987 Repl. Vol. 4A), asserting that Harris had failed to exhaust her insurance benefits and thereby waived any right to recover from CIGA. The trial court entered a declaratory judgment ordering that CIGA make available for recovery by Harris the difference between her $25,000 uninsured motorist coverage limit and CIGA's liability limit of $100,000 as provided by § 10-4-508(1)(a), C.R.S. (1990 Cum.Supp. 4A). The court further found that CIGA remained obligated to defend Keseloff and Guthrie and pay *985 damages awarded to Harris up to the statutory limit. This appeal by CIGA followed.

I.
CIGA primarily contends that the trial court erred in its conclusion that Harris had satisfied the exhaustion requirement mandated by § 10-4-512(1), C.R.S. (1987 Repl.Vol. 4A). We disagree.
Section 10-4-512(1), titled Nonduplication of Recovery, reads in pertinent part:
"Any person having a claim against his insurer ... shall be required to exhaust first his right under such policy. An amount payable on a covered claim under this part 5 shall be reduced by the amount of such recovery under the claimant's insurance policy."
CIGA argues that Harris, by voluntarily settling her claim for less than the policy coverage, failed to exhaust her right under her policy and thereby forfeited any claim against CIGA, Keseloff, or Guthrie.
CIGA places no significance on Harris' receipt of 90% of the available policy limit or of her greater net cash receipt from accepting her insurance company's offer of settlement as opposed to litigation. Rather, CIGA argues that the supplemental coverage provided by statute is available only when a covered claim has entirely used up the amount available under a claimant's own policy.
The intent of the General Assembly in enacting the Colorado Insurance Guaranty Association Act is to "provide a mechanism for payment of covered claims ... to avoid excessive delay in payment and financial loss to claimants or policyholders because of the insolvency of the insurer...." Section 10-4-502, C.R.S. (1987 Repl.Vol. 4A). Courts are directed by § 10-4-505, C.R.S. (1987 Repl.Vol. 4A) that the Act shall be liberally construed to effect the purposes enumerated in § 10-4-502.
The situation at issue presents us with the task of construing, for the first time in Colorado, the statutory directive that a claimant must "exhaust" first his right under his own insurance coverage before he may assert a claim against CIGA. Interpretations of similar statutes in other states have generally yielded one of three results.

A.

The Washington Approach
In Prutzman v. Armstrong, 90 Wash.2d 118, 579 P.2d 359 (1978), the Supreme Court of Washington ruled that a claimant had not exhausted her right when she settled for less than her full policy limit. There, the court reasoned that any other interpretation would furnish no incentive for claimant to seek an adequate settlement because the insurance fund could be forced to pay the difference between the settlement and the actual value of the claim. Accord White v. Accardo, 15 Pa.D. & C.3d 609 (1980).
However, Prutzman is distinguishable. Here, under the trial court's order, CIGA is liable only for any judgment over the limits of Harris' policy, up to the statutory limit, not the difference between what claimant actually received from her insurer and the amount of judgment to the statutory limit, as in Prutzman.

B.

The Michigan Approach
An alternative approach was used by the Michigan Supreme Court in Watts v. Michigan Department of State, 394 Mich. 350, 231 N.W.2d 43 (1975). There, claimants accepted less than their policy limit for uninsured motorist coverage, but because they had negotiated in good faith with their insurer, they were entitled to seek from the insurance fund that portion of their claim not paid by their insurer in addition to that part which exceeded their own uninsured motorist coverage.
Colorado, like Michigan, has a public and judicial policy favoring settlement. However, we conclude that the "good-faith" rule adopted by the Michigan court would lead to excessive litigation by requiring a case-by-case determination of good faith, thus frustrating the primary purpose of encouraging settlement.

*986 C.

The Kansas Approach
A third approach was adopted by the Kansas Supreme Court in Hetzel v. Clarkin, 244 Kan. 698, 772 P.2d 800 (1989). There, claimant settled for $25,000 instead of her policy limit of $30,000, but she was deemed by the court to have exhausted the policy limit of her uninsured motorist coverage by making a claim on that coverage.
The Hetzel court concluded that the amount available for recovery from the state's guaranty association is the difference between the policy limit of a claimant's uninsured motorist coverage and the guaranty association's liability limit even if the claimant actually receives less than his own policy limit.
We agree with the trial court that the Kansas approach is most consistent with the public policy of Colorado.
We see a number of advantages to this approach under our statute. First, since a claimant must absorb the difference in the amount of his settlement and his insurance coverage, a good faith effort on his part in negotiating the settlement is encouraged. Second, under this interpretation, nonduplication of recovery as contemplated by § 10-4-512(1), C.R.S. (1987 Repl.Vol. 4A) is achieved. Third, this construction also avoids prejudice to CIGA by making it liable only for those amounts claimant would have received from it had we accepted its interpretation of "exhaustion", i.e., requiring a claimant to settle for no less than the full amount of his own uninsured motorist coverage. Further, this approach effectuates the purposes of the statute to avoid excessive delay in payment and financial loss to claimants or policyholders because of insolvency of an insurer. See §§ 10-4-502 and 10-4-505, C.R.S. (1987 Repl.Vol. 4A).
We here adopt the Kansas approach as the law in Colorado and conclude thereby that Harris received the policy limits under her uninsured motorist coverage and thus exhausted her right as required by § 10-4-512(1) prior to asserting a claim against CIGA. Therefore, the amount available for recovery from CIGA is the difference between her policy limit of $25,000 and CIGA's statutory limit of $100,000.

II.
CIGA asserts the trial court erred in ordering it to defend and indemnify Keseloff and Guthrie. We disagree.
Because we hold that Harris has exhausted her right under the statute, CIGA must assume its role as the insurer and perform the duties and obligations of the insolvent insurer. See § 10-4-508(1)(b), C.R.S. (1987 Repl.Vol. 4A). The statutory scheme provides that CIGA "steps into the shoes" of the insolvent insurance company as to claims within the coverage and limits of its insurance policy, subject to the statutory maximum. Fontenot v. Haight, 764 P.2d 378 (Colo.App.1988).
The statute does not contemplate protection from financial loss only to the claimant, but also to the policyholders. Consequently, CIGA remains obligated to continue its defense of Keseloff and Guthrie against the personal injury claim of Harris and to pay damages awarded to Harris up to the statutory maximum minus the $25,000 she is deemed to have received from her own coverage.

III.
The contention of Harris, on cross-appeal, that CIGA lacks standing to appeal the trial court's order is without merit.
The judgment is affirmed.
PLANK and HUME, JJ., concur.