MAYTAG CORPORATION, Appellee and Appellant,

v.

TENNESSEE INSURANCE GUARANTY ASSOCIATION, Appellant and Appellee;
Ohio Insurance Guaranty Association, Appellee.  (Two Cases.)■

[Cite as *Maytag Corp. v. Tennessee Ins. Guar. Assn.* (1992), 79 Ohio App.3d 817.]

Court of Appeals of Ohio,
Franklin County.

Nos. 91AP–1115, 91AP–1157.

Decided May 5, 1992.

*Arter & Hadden, Louis E. Gerber* and *William Adams,* for Maytag Corporation.

*Thompson, Hine & Flory, James T. Crowley* and *John J. Gruttadaurio; Boult, Cummings, Conners & Berry, William D. Leader, Jr.,* and *Charles W. McElroy,* for Tennessee Insurance Guaranty Association.

*Vorys, Sater, Seymour & Pease, Thomas B. Ridgley* and *J. Scott Jamieson,* for Ohio Insurance Guaranty Association.

———————

McCORMAC, Judge.

In March 1985, a vehicle driven by Nikki Ridenour was struck by a vehicle driven by Thomas Searl while he was acting within the course and scope of his employment with Magic Chef, Inc. The accident occurred in Portage County, Ohio, and caused Ridenour to suffer severe and permanent injuries. Ridenour was a resident of Mogadore, Ohio, at the time of the collision. Magic Chef was a Delaware corporation and had its principal place of business in Cleveland, Tennessee. In May 1986, Magic Chef merged with Maytag as a wholly owned subsidiary and, in January 1988, was dissolved into Maytag and ceased to be a separate corporate entity.

Ridenour filed suit against Magic Chef and others in the Portage County Court of Common Pleas, seeking damages for her personal injuries. Maytag carried $1,000,000 in primary, general liability insurance through Travelers Insurance Company and an additional $10,000,000 in excess coverage through an umbrella policy with Integrity Insurance Company. A $2,000,000 settlement was reached in the action, whereby Travelers agreed to surrender its policy limits and Integrity agreed to contribute $1,000,000 under the terms of the excess policy.

Integrity's $1,000,000 payment was conditioned on approval from the New Jersey Insurance Commissioner, since Integrity was in rehabilitation at the time the settlement was reached. Prior to payment of the funds, Integrity was placed into liquidation by order of the New Jersey courts. No payment was ever made by Integrity and Ridenour's claim was eventually settled by the payment of $1,000,000 of Maytag's own funds.

Thereafter, Maytag submitted claims to both the Tennessee ("TIGA") and Ohio Insurance Guaranty Associations ("OIGA"). By settlement, OIGA paid $200,000 of its statutory limit of $300,000 to Maytag, contending that its obligation was satisfied since TIGA was responsible for $100,000. TIGA denied liability and this litigation ensued in the Franklin County Court of Common Pleas.

Subsequently, Maytag filed motions for summary judgment against both TIGA and OIGA. TIGA responded with its own motion for summary judgment against Maytag. The trial court granted Maytag's motions finding TIGA liable to Maytag for $89,899.99 and OIGA liable for $10,100.01. Consequently, TIGA's motion was overruled.

In case No. 91AP–1157, plaintiff-appellant, Maytag Corporation, appeals the trial court's finding that defendant-appellee, TIGA, is liable for $89,899.99. Maytag argues that TIGA should be liable for $99,900. In case No. 91AP–1115, defendant-appellant, TIGA, appeals the trial court's finding of its liability. Both defendant-appellant/cross-appellant, OIGA, and plaintiff-appellee/cross-appellant, Maytag, have filed cross-appeals. These cases were subsequently consolidated.

In its appeal, TIGA raises the following assignments of error:

"A. The trial court erred in denying TIGA's Motion for Summary Judgment, since as a matter of law, the claim of appellee, Maytag Corporation ('Maytag') is not within the scope of TIGA's statutory obligations under the Tennessee Insurance Guaranty Association Act.

"1. The trial court incorrectly interpreted the provisions of the Tennessee Insurance Guaranty Association Act to allow greater recovery by policyholders asserting indemnification claims than by injured policyholders or third-parties asserting their claims directly.

"2. The trial court erroneously concluded that Maytag's claim was not subject to statutory provisions which by their clear language limit TIGA's liability on claims arising from a bodily injury to payment of medical expenses and lost wages.

"3. The trial court erroneously interpreted the Tennessee Insurance Guaranty Association Act to allow for the recovery of amounts due to an insurance company under a subrogation provision.

"4. The trial court erroneously interpreted the Tennessee Insurance Guaranty Association Act to allow Maytag to recover from TIGA without first exhausting its remedies against a solvent insurer.

"B. The trial court erred in granting Maytag's Motion for Summary Judgment because there are insufficient facts in the record from which to find that its claim is within the scope of TIGA's statutory obligation."

■ Maytag and OIGA advanced essentially the same assignment of error in their cross-appeals and contend that the trial court erred in interpreting the retained limits provision of the Integrity insurance policy to permit a $10,000 setoff to TIGA and a corresponding $10,000 increase in liability to OIGA.

Due to the interrelationship of the issues presented by TIGA's assignments of error, they will be discussed together.

The Tennessee Insurance Guaranty Association was created by the Tennessee legislature one year after the Ohio General Assembly created this state's counterpart, the Ohio Insurance Guaranty Association. Both pieces of legislation are patterned after the Model Insurance Guaranty Association Bill

drafted by the National Association of Insurance Commissioners and are very similar in most respects. Versions of the Model bill have been enacted by most states. See *Ohio Ins. Guar. Assn. v. Simpson* (1981), 1 Ohio App.3d 112, 1 OBR 418, 439 N.E.2d 1257; Appleman's Insurance Law and Practice, Section 10801. Most courts are in agreement that the guaranty Act is remedial in nature and, as such, should be liberally construed. *Railroad Roofing & Bldg. Supply Co. v. Financial Fire & Cas. Co.* (1981), 85 N.J. 384, 427 A.2d 66; *Colorado Ins. Guar. Assn. v. Harris* (Colo.App.1991), 815 P.2d 983.

The purpose of TIGA, as stated in Tenn.Code Ann. 56–12–102:

" * * * [I]s to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, and to provide an association to assess the cost of such protection among insurers. * * * "

The guaranty association is designed to place claimants in the same positions they would have been in if the liability insurer had not become insolvent. *Luko v. Lloyd's of London* (1990), 393 Pa.Super. 165, 573 A.2d 1139. Once an insurer is declared insolvent, the association steps into the shoes of the insurance company with all of the rights, duties and obligations of the insolvent insurer to the extent those obligations are defined by statute. *Washington Ins. Guar. Assn. v. Mullins* (1991), 62 Wash.App. 878, 816 P.2d 61. TIGA is deemed to be the insurer to the extent of its statutory obligation on the claim. *Id.*

TIGA contends that the major portion of Ridenour's medical claims are not covered claims because they were paid by another insurer with an expressed right of subrogation. Ridenour's medical care provider, Health Guard, paid $106,760.04 in necessary medical expenses and Ridenour was personally responsible for an additional $14,673.22.

Tenn.Code Ann. 56–12–104(4)(B) excludes from the definition of "covered claims" any amount due an insurer as subrogation or otherwise. TIGA contends that, since the total statutory obligation is $99,899.99, pursuant to Tenn.Code Ann. 56–12–107(a)(1)(A), and that $106,760.04 must be offset against this amount, its liability is totally offset and it has no obligation to Maytag. The trial court drew a distinction between Health Guard's subrogation claim and Maytag's indemnification claim. The trial court's reasoning is persuasive in light of Tenn.Code Ann. 56–12–104(4)(B) and the general intent behind the creation of guaranty associations. However, our research has failed to find a case adopting this approach, although it was discussed in *Cincinnati Ins. Co. v. Standard–Keil Hardware Mfg. Co., Inc.* (Mar. 27,

1989), Athens App. No. 1386, unreported, 1989 WL 29837. This might be due to the unique fact pattern presented by this appeal, as we have found no case that is factually on all fours with the present action.

TIGA argues that Health Guard's expressed right of subrogation for the benefits paid to Ridenour are in excess of TIGA's statutory obligation and, therefore, the total amount TIGA could pay is excluded from the definition of a "covered claim." We are unpersuaded by TIGA's argument.

The claim at issue is not being made by the injured plaintiff but by the policyholder Maytag. Maytag has no right of subrogation and Health Guard is not a party to this action. Maytag has paid its own funds to plaintiff and is merely trying to recoup its expenses the same as if Integrity had not become insolvent. Furthermore, the amounts paid by Health Guard do not represent the total medical expenses incurred by Ridenour. TIGA argues that the only expenses that can be considered are those that have occurred within thirty days of the carrier's insolvency declaration. Continuing, TIGA contends that future medical expenses cannot be considered in this figure. To accept this reasoning would mean that, whenever a claimant incurred future expenses which were not included in the original claim, a new proceeding would need to be instituted against the guaranty association. In light of the remedial nature of this statute, we cannot agree with this narrow interpretation.

Tenn.Code Ann. 56–12–107(a)(1)(B) permits the association to add to the claimant's medical expenses " * * * an additional sum as compensation for permanent physical impairment * * *." The same section addresses lost wages that could have been earned in the normal course of employment. Both provisions indicate an intention by the legislature to require the association to look beyond the immediate financial impact to the claimant and into the future. The parties stipulated to the permanency of Ridenour's injuries and there is unrebutted deposition evidence indicating that Ridenour will incur as much as $100,000 per year in future necessary medical expenses. TIGA did not object to the inclusion of this evidence and, in fact, submitted its own affidavit in addition to the stipulated evidence.

Therefore, even if we were to conclude that the amounts paid by Health Guard are not covered claims, the future payments which Ridenour will incur are covered claims in excess of TIGA's statutory limit. Our conclusion is further supported when the definition of "covered claim" is read in conjunction with the statutory prohibition of duplicative recovery.

Tenn.Code Ann. 56–12–111, entitled "Nonduplication of recovery—Exhaustion of other remedies," provides under subsection (a):

" * * * Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer, which is also a

covered claim, shall be required to exhaust first his right under such policy. Any amount payable on a covered claim under this part shall be reduced by the amount of any recovery under such insurance policy."

Minnesota's Insurance Guaranty Fund Statute is almost identical to that enacted by Tennessee in its prohibition of duplicative recovery. The Minnesota Court of Appeals, in addressing a similar issue, held that the guaranty association is entitled to deduct health insurance benefits only when the deduction would prevent a double recovery by the claimant. *Gimmestad v. Gimmestad* (Minn.App.1990), 451 N.W.2d 662. In *Gimmestad,* the court reviewed the conflicting approaches taken by various jurisdictions. The court noted the approach taken by Pennsylvania, which is advanced by TIGA, that exhaustion and/or offset is required when a claim does not fit the statutory definition of a "covered claim." *Henninger v. Riley* (1983), 317 Pa.Super. 570, 464 A.2d 469. Illinois and Massachusetts have taken a similar approach. See *Ferrari v. Toto* (1981), 383 Mass. 36, 417 N.E.2d 427, and *Lucas v. Illinois Ins. Guar. Fund* (1977), 52 Ill.App.3d 237, 10 Ill.Dec. 81, 367 N.E.2d 469.

A contrary approach is that setoff applies when a double recovery would result. *Senac v. Sandefer* (La.1982), 418 So.2d 543. This is the approach taken in *Gimmestad, supra,* and is more consistent with the general purpose of a guaranty association.

TIGA has cited the New Jersey case of *Sussman v. Ostroff* (1989), 232 N.J.Super. 306, 556 A.2d 1301, for the proposition that payments made by Health Guard must be offset from the liability of TIGA. The *Sussman* court, like the Pennsylvania and Massachusetts courts, reasoned that:

" * * * Policyholders of solvent property and liability insurers pay only for the protection lost by similarly-covered policyholders of insolvent insurers, and the insurance industry itself bears the risk of loss of its own direct claims against the insolvent carrier, which they may, however, make against the insolvent carrier's receiver." *Id.* at 314, 556 A.2d at 1305.

However, the New Jersey court went on to add that the underlying rationale was the avoidance of a double recovery by the claimant. *Id.* at 314–315, 556 A.2d at 1305. Under this approach, if the victim's recovery against the tortfeasor, whose insurance has become insolvent, is less than his medical payments, the guaranty association is excused from indemnification. However, if the injured party's recovery against the tortfeasor is more than the medical payments received, the association is liable for the difference between the two up to its statutory limits.

Under an approach based on an offset of medical payments, TIGA cannot be excused from its obligation. The evidence is undisputed that Ridenour in-

curred over $100,000 in medical treatment directly related to the collision. The evidence is also undisputed that Ridenour will require future medical services exceeding $100,000 per year. Therefore, by the time the trial court entered judgment for Maytag, Ridenour had incurred over $500,000 in necessary medical expenses that will continue into the foreseeable future. Those medical payments were an integral part of the settlement. Even if TIGA were permitted to offset the payments made by Health Guard, the balance would still exceed the limit imposed by Tennessee law.

The same conclusion results if the double recovery rationale is applied. Ridenour received $2,000,000 from Travelers and Maytag. None of the money paid by TIGA will reach Ridenour but, rather, will be used to indemnify Maytag, the insured (not the insurer), for its portion of the settlement. Even if all available sources of insurance are exhausted, Maytag will not recoup all of its payment of $1,000,000 and Ridenour will not be paid anything additional. The settlement figure represents the agreed amount of the loss, as if a judgment for that amount had been entered. If TIGA is required to pay the maximum allowable under its Act, there will not be a double recovery to anyone.

█ Finally, the public policy sought to be advanced by the Guaranteed Fund Act is best supported by allocating some of the loss to TIGA. The Act was created to protect policyholders against insolvency of insurers by spreading the cost of the insolvency throughout the insurance industry. So long as a policyholder does not benefit by its carrier's insolvency, by recouping a windfall double recovery, the fund should be liable for its share so that the loss may be spread throughout the industry.

The trial court did not err in granting Maytag's motion for summary judgment. The record shows that reasonable minds could come to but one conclusion, which is that Maytag is entitled to judgment as a matter of law. There are no genuine issues of material fact, the facts having been stipulated.

TIGA's assignments of error are overruled.

█ Maytag and OIGA have cross-appealed, assigning as error the trial court's reduction of TIGA's liability by $10,000 pursuant to the terms of the policy between Maytag and Integrity Insurance Company. The trial court further found that OIGA was responsible for this additional $10,000 in liability to which OIGA objects.

The provisions of the policy of excess coverage at issue provides:

"The Company shall be liable only for the ultimate net loss the excess of the greater of the Insured's underlying limit or retained limit defined as:

" * * *

"(b) Retained limit—The amount specified in item 3(c) of the declarations as the result of an occurrence not covered by said underlying insurance, and which shall be borne by the Insured, separately as respects to each occurrence during the period of this policy."

Item 3(c) of the Declarations page sets the retained limits amount at $10,000. The trial court construed this in the nature of the deductible, regardless of underlying coverage, and reduced TIGA's liability by $10,000. Conversely, the trial court increased OIGA's liability to Maytag by the same $10,000. We agree with Maytag and OIGA that the trial court erred in its interpretation of the retained limits provision.

■ The express language of the policy provides that the retained limits apply only when there is no underlying primary insurance. The underlying insurance issued by Travelers is referred to in an attachment to the policy as mandated by paragraph 2(b) of the policy. Travelers did, in fact, surrender the limits of its policy and, hence, the retained limits provision is inapplicable to this action. The retained limits provision of the Integrity policy applies only in instances that are excluded from the reach of the underlying primary policy. *Coates v. Northlake Oil Co.* (La.App.1987), 499 So.2d 252; *Garmany v. Mission Ins. Co.* (C.A.11, 1986), 785 F.2d 941; *Ridgway v. Gulf Life Ins. Co.* (C.A.5, 1978), 578 F.2d 1026.

TIGA's liability should not have been reduced nor should have OIGA's liability been increased.

Maytag's sole assignment of error is sustained, as is OIGA's identical assignment of error.

TIGA's assignments of error are overruled and the judgment of the trial court is affirmed as to liability. The cross-appeals of Maytag and OIGA are sustained and the judgment of the trial court is reversed as to the amount of TIGA's liability. These cases are remanded to the trial court with instructions to increase the judgment in favor of Maytag against TIGA to $99,899.99 and to enter judgment in favor of OIGA.

*Judgment partially affirmed,*
*partially reversed*
*and causes remanded*
*with instructions.*

BOWMAN and TYACK, JJ., concur.