Merrimack
No. 95-812

## NEW HAMPSHIRE INSURANCE GUARANTY ASSOCIATION

v.

## PITCO FRIALATOR, INC.

January 20, 1998

*Orr & Reno,* of Concord (*R. James Steiner* on the brief) and *Hutchins, Wheeler & Dittmar,* of Boston, Massachusetts (*Joseph C. Tanski* and *Margaret A. Robbins* on the brief, and *Mr. Tanski* orally), for the plaintiff.

*Sulloway & Hollis,* of Concord (*Jeffrey S. Cohen* on the brief) and *Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.,* of Boston, Massachusetts (*Paul D. Wilson* and *Rosemary M. Allen* on the brief, and *Mr. Wilson* orally), for the defendant.

HORTON, J. The plaintiff, New Hampshire Insurance Guaranty Association (NHIGA), appeals a decision of the Superior Court (*Arnold,* J.) granting summary judgment to the defendant, Pitco Frialator, Inc. (Pitco), and denying NHIGA's cross-motion for summary judgment. The superior court interpreted the New Hampshire Insurance Guaranty Association Act, *see* RSA ch. 404-B (1983 & Supp. 1997), as obligating NHIGA to pay Pitco $300,000 as reimbursement for Pitco's payment to third parties in settling a tort action after the insolvency of Pitco's liability insurer. We reverse.

The following facts are undisputed, except as noted. In 1984, William Lorkowski sustained serious injuries during the course of his employment at Lender's Bagel Bakery (Lender's Bagel) in Buffalo, New York. Following the accident, Lorkowski received over $300,000 in benefits from the workers' compensation insurers of Lender's Bagel. Alleging that equipment manufactured by Pitco caused the accident, Lorkowski and his wife commenced an action against Pitco in New York. The Lorkowskis' action sought approximately $15 million in damages, $5 million of which represented the wife's alleged losses. Pitco subsequently commenced a third-party action against Lender's Bagel in order to obtain contribution for any liability established against Pitco in the Lorkowskis' action. *See Gonzales v. Armac Industries, Ltd.,* 611 N.E.2d 261, 264 (N.Y. 1993)

(discussing defendant manufacturer's right to seek contribution from plaintiff's employer despite general exclusivity of workers' compensation regime).

At the time of Lorkowski's accident, Pitco had liability insurance through a policy with Ideal Mutual Insurance Company (Ideal). During the pendency of the Lorkowskis' action, however, Ideal was declared insolvent. As a result of Ideal's insolvency, NHIGA became obligated to defend and pay certain claims under Ideal's policies to the extent provided by RSA chapter 404-B. *See* RSA 404-B:8, I (1983 & Supp. 1997). Accordingly, NHIGA provided counsel for Pitco in the Lorkowskis' action against Pitco. NHIGA subsequently informed Pitco that it would deny coverage to Pitco to the extent that Lorkowski had received workers' compensation benefits.

In April 1992, Pitco settled the Lorkowskis' action for $500,000. Following Pitco's request for NHIGA's comments, NHIGA neither consented nor objected to the settlement. At approximately the same time that Pitco settled with the Lorkowskis, the Lorkowskis reached a settlement with Lender's Bagel through its workers' compensation and liability insurance carriers. This settlement with Lender's Bagel provided for $1.2 million to the Lorkowskis, the continuation of workers' compensation benefits, and a waiver by the workers' compensation insurers of any lien or offset resulting from past or future benefits, *see generally* N.Y. Work. Comp. Law § 29 (McKinney 1993). NHIGA and Pitco dispute the precise sequence of these two settlements, as well as the role played by Pitco in the Lorkowskis' settlement with Lender's Bagel.

In October 1992, Pitco and Lender's Bagel agreed to release each other from any and all claims arising from Lorkowski's accident. Neither party paid the other any money for the mutual releases.

In accordance with its settlement agreement, Pitco paid the Lorkowskis $500,000 from its own funds. When Pitco sought $300,000 from NHIGA as reimbursement for the settlement, NHIGA denied any obligation and refused to make any payments to Pitco. NHIGA then commenced this action seeking a declaration that it was not obligated to reimburse Pitco for the settlement with the Lorkowskis. Pitco filed a cross-petition for reimbursement of $300,000, and both parties moved for summary judgment. The superior court granted Pitco's motion and denied NHIGA's motion, ruling that: (1) the relevant "claim" under RSA chapter 404-B was Pitco's claim against NHIGA for reimbursement, not the Lorkowskis' underlying tort action against Pitco; (2) Pitco's claim constituted a "covered claim" under RSA 404-B:5, IV (1983); and (3) Pitco's "covered claim" obligated NHIGA to pay $300,000 —

NHIGA's statutory liability limit for "each covered claim," RSA 404-B:8, I(a) (Supp. 1997).

On appeal, NHIGA argues that the superior court erred in its analysis of RSA chapter 404-B by focusing solely on Pitco's claim against NHIGA and thereby failing to consider the Lorkowskis' underlying action against Pitco, and by holding that Pitco had a "covered claim" for $300,000 despite: (1) the Lorkowskis' receipt of over $300,000 in workers' compensation benefits; (2) the asserted failure of Pitco and the Lorkowskis to exhaust their rights against solvent insurers; and (3) the allegedly ineffective lien waivers of the workers' compensation insurers on the Lorkowskis' recovery from Pitco. NHIGA also argues that it had no obligation to pay Pitco under the specific terms of the Ideal policy because Pitco voluntarily settled with the Lorkowskis before Pitco became "legally obligated to pay." Finally, NHIGA alternatively contends that, if it is not entitled to judgment as a matter of law based on the statute or the Ideal policy, genuine issues of material fact exist which preclude summary judgment. Because we find NHIGA's arguments regarding the significance of the Lorkowskis' underlying claims and their receipt of workers' compensation benefits dispositive, we need not address NHIGA's other arguments.

■ In reviewing the superior court's summary judgment rulings, we consider the evidence in the light most favorable to each party in its capacity as non-movant and, if no genuine issue of material fact exists, we determine whether either moving party is entitled to judgment as a matter of law. *See New England Tel. & Tel. Co. v. City of Franklin*, 141 N.H. 449, 452, 685 A.2d 913, 916 (1996); RSA 491:8-a, III (1983). "The interpretation of a statute is to be decided ultimately by this court." *Petition of Walker*, 138 N.H. 471, 474, 641 A.2d 1021, 1024 (1994).

The statute at issue here, the New Hampshire Insurance Guaranty Association Act, was enacted in part for the stated purpose of providing "a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer." RSA 404-B:2 (1983); *see* RSA 404-B:4 (1983). Central to the statute is the concept of a "covered claim," which is defined as

> a net unpaid claim . . . which arises out of and is within coverage and not in excess of the applicable limits of an insurance policy to which this chapter applies issued by an

insurer, if such insurer after the effective date of this chapter is declared insolvent . . . .

RSA 404-B:5, IV. NHIGA is obligated to pay certain covered claims, RSA 404-B:8, I(a), and is "deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent," RSA 404-B:8, I(b) (1983).

Despite its seemingly expansive purpose, the statute places several limitations on NHIGA's payment obligations. First, NHIGA's exposure per covered claim is capped at $300,000. *See* RSA 404-B:8, I(a). Second, the definition of "covered claim" specifically excludes "any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise." RSA 404-B:5, IV. Third, the statute provides:

> Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, including but not limited to the provisions of uninsured motorist coverage of any policy, shall be required to exhaust first his right under such policy. Any amount payable on a covered claim under this chapter shall be reduced by the amount of any recovery under such insurance policy.

RSA 404-B:12, I (1983).

█    Our statute is virtually identical in both purpose and language to statutes in numerous other States. *See, e.g., Ventulett v. Maine Ins. Guar. Ass'n*, 583 A.2d 1022, 1023 (Me. 1990). *See generally* Note, *Insurance Company Insolvencies and Insurance Guaranty Funds: A Look at the Nonduplication of Recovery Clause*, 74 IOWA L. REV. 927, 934 (1989). Confronted with disputes concerning their guaranty association's payment obligations, courts in other jurisdictions have commented on the ambiguities and apparent inconsistencies in their statutes, *see Cimini v. Nevada Ins. Guar. Ass'n*, 915 P.2d 279, 282 (Nev. 1996); *Int'l Coll. Serv. v. Vt. Prop. & Cas. Ins.*, 555 A.2d 978, 980 (Vt. 1988), and on the disparate interpretations given similar statutory language, *see Mosier v. Oklahoma Prop. and Cas. Ins.*, 890 P.2d 878, 880 (Okla. 1994). RSA chapter 404-B is also "not a model of lucidity." *Aztec v. Prop. & Cas. Ins. Guar. Ass'n*, 853 P.2d 726, 730 (N.M. 1993). We proceed to interpret the statute by focusing first on its language, *see Bohan v. Ritzo*, 141 N.H. 210, 213, 679 A.2d 597, 600 (1996), by considering "the context of the overall statutory scheme," *Appeal of Ashland*

*Elec. Dept.*, 141 N.H. 336, 340, 682 A.2d 710, 712 (1996) (quotation omitted), and lastly, by looking for guidance to other States' interpretations of similar statutes, *see Roberts v. General Motors Corp.*, 138 N.H. 532, 537-38, 643 A.2d 956, 959 (1994).

■ The threshold issue in this case concerns whether the applicable "claim" under the statute refers (1) to the insured's claim against NHIGA pursuant to a policy with an insolvent insurer, or (2) to the claim brought by a third party against the insured which gives rise to the insured's claim against NHIGA, or (3) to *both* the insured's claim and the underlying claim of the third party. As noted, the superior court concluded that "claim" refers only to the insured's claim against NHIGA. Although that interpretation has some support, *see Maytag Corp. v. Tennessee Ins. Guar. Assn.*, 608 N.E.2d 772, 775 (Ohio Ct. App.), *juris. motion overruled*, 600 N.E.2d 679 (Ohio 1992), we hold that "claim" encompasses *both* the insured's claim against NHIGA and the third party's underlying claim against the insured. Our interpretation finds support in the statute's references to the rights and obligations of "claimants or policyholders," RSA 404-B:2, of "the claimant or insured," RSA 404-B:5, IV(a), of the "policyholder or claimant," RSA 404-B:8, I(a), and of the "insured or claimant," RSA 404-B:11, I (1983). *See Connecticut Ins. Guar. v. Union Carbide*, 585 A.2d 1216, 1220-22 (Conn. 1991); *see also H.K. Porter Co. v. Pennsylvania Ins. Guar. Ass'n*, 75 F.3d 137, 141-42 (3d Cir. 1996). A construction of the statute that equated "claimant" with "insured" or "policyholder" would contravene the fundamental principles "that all of the words of a statute must be given effect and that the legislature is presumed not to have used superfluous or redundant words." *Merrill v. Great Bay Disposal Serv.*, 125 N.H. 540, 543, 484 A.2d 1101, 1103 (1984).

■ Accordingly, in order to determine the payment obligations of NHIGA in cases involving third-party claims against the insured which have been paid by the insured, we adopt the following two-part analysis. We first examine the underlying action brought against the insured and determine the existence and extent of NHIGA's obligation to defend and indemnify in that action. NHIGA's obligation will be measured by the terms of both the statute and the applicable insurance policy. *See* RSA 404-B:8, I(a), (b). If we conclude that NHIGA had an obligation to defend and indemnify in the underlying action against the insured, we proceed to a second step and analyze the existence and extent of NHIGA's payment obligation with respect to the insured's reimbursement

claim against NHIGA. In the second step, we again focus on the provisions of both the statute and the insurance policy. This two-step approach seeks to ensure that NHIGA's obligation from a particular occurrence will not vary based on the procedure by which the claim is asserted against NHIGA, *i.e.*, a claim by the injured third party versus a claim by the insured following its payment of a claim asserted against it by the injured third party.

■ Proceeding to step one in this case, we conclude that NHIGA had no obligation to defend or indemnify Pitco following the Lorkowskis' receipt of over $300,000 in workers' compensation benefits. Our conclusion flows from RSA 404-B:12, I, in conjunction with RSA 404-B:8, I(a).

Pursuant to the first sentence of RSA 404-B:12, I, a "person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim . . . shall be required to exhaust first his right under such policy." Several courts have held that an injured party's right to workers' compensation payments is a "claim" against an insurer under provisions comparable to the first sentence of RSA 404-B:12, I. *See Ventulett*, 583 A.2d at 1024; *Mosier*, 890 P.2d at 879-80; *Bird v. Norpac Foods, Inc.*, 934 P.2d 382, 387 (Or. 1997). *But see Alabama Ins. Guar. v. Magic City Trucking*, 547 So. 2d 849, 853 (Ala. 1989). These courts essentially reason, and we agree, that workers' compensation constitutes insurance in this context, *see Ventulett*, 583 A.2d at 1024; *Bird*, 934 P.2d at 387, and that a claim for workers' compensation need not be a "covered claim" arising from the insolvency of an insurer in order to trigger application of the statutory provision, *see Bird*, 934 P.2d at 387; *cf. Oglesby v. Liberty Mut. Ins. Co.*, 832 P.2d 834, 843-44 (Okla. 1992) (reasoning that limiting the exhaustion requirement to statutory covered claims "would be counterproductive"). Furthermore, the conclusion that RSA 404-B:12, I, applies to a party's right to workers' compensation benefits comports with the statute's overall objective: establishing NHIGA as an insurer "of last resort." *Ventulett*, 583 A.2d at 1023; *Bird*, 934 P.2d at 386.

Under the second sentence of RSA 404-B:12, I, "[a]ny amount payable on a covered claim under this chapter shall be reduced by the amount of any recovery under [an] insurance policy" identified in the provision's first sentence. In construing similar statutory language, some courts have held that the dollar amounts recovered by a party should be subtracted from the guaranty association's statutory dollar limits of exposure. *See, e.g., Mosier*, 890 P.2d at 880.

Other courts, relying on the provision's "Nonduplication of Recovery" heading, have concluded that any amounts recovered should be subtracted from the amount of the party's total unrecovered damages, with the resulting figure compared to the guaranty association's statutory dollar limits. *See, e.g., Int'l Coll. Serv.*, 555 A.2d at 980. Application of the former approach in this case would yield a conclusion that NHIGA had no payment obligation, because the $300,000 of workers' compensation benefits would reduce NHIGA's liability limit of $300,000, *see* RSA 404-B:8, I(a), to zero. Application of the latter approach, in contrast, would entail subtracting the $300,000 of workers' compensation benefits from the amount of the Lorkowskis' unrecovered damages, with NHIGA obligated to pay the lesser of the resulting figure or $300,000.

Although the *title* of RSA 404-B:12 suggests that its purpose is merely to prevent a double recovery, we conclude that the *language* of the provision requires us to subtract the $300,000 of workers' compensation benefits from NHIGA's $300,000 statutory cap. *Cf. Lorette v. Peter-Sam Inv. Properties*, 140 N.H. 208, 211, 665 A.2d 341, 343 (1995) (title of statutory section is not conclusive of its interpretation). Indeed, the *"amount payable* on a covered claim under this chapter" is *$300,000* pursuant to RSA 404-B:8, I(a); further, this $300,000 "amount payable" must "be reduced by" the $300,000 of workers' compensation payments, according to RSA 404-B:12, I.

Accordingly, we hold that NHIGA had no indemnification obligation in the Lorkowskis' action against Pitco following the Lorkowskis' receipt of over $300,000 in workers' compensation benefits. Under our two-step analysis, it necessarily follows that NHIGA had no payment obligation to Pitco arising from Pitco's settlement of the Lorkowskis' action.

In resolving this case, we are aware of Pitco's assertions that Lorkowski's wife did not receive workers' compensation benefits and that Pitco's $500,000 settlement with the Lorkowskis encompassed the claims of both Lorkowski and his wife. Based on these assertions, Pitco argues that any statutory offset required by RSA 404-B:12, I, "would not apply to that portion of the settlement which was for Mrs. Lorkowski's claims." We disagree in the context of this case. First, although Pitco and NHIGA dispute whether Lorkowski's wife received workers' compensation benefits, the Lorkowskis' settlement agreement with the insurers of Lender's Bagel is clear. That agreement — between the parties directly involved — states that "past worker's compensation benefits [were] paid to the Plaintiffs, WILLIAM J. LORKOWSKI, SR. and KIM

OWEN, his wife." We discern no serious argument contradicting this fact before the trial court. Second, and more importantly, Pitco submitted its $300,000 claim to NHIGA as a *single* reimbursement claim for Pitco's single and unallocated $500,000 settlement with the Lorkowskis, not as separate reimbursement claims from distinct settlements with Lorkowski and his wife.

In conclusion, we hold that the superior court erred in granting summary judgment to Pitco and failing to grant summary judgment to NHIGA.

*Reversed.*

BROCK, C. J., with whom JOHNSON, J., joined, dissented; the others concurred.

BROCK, C.J., dissenting: As the majority recognizes, the threshold issue is determining which is the applicable "claim" under the statute. The majority concludes that "claim" encompasses both the insured's claim against New Hampshire Insurance Guaranty Association (NHIGA) and the third party's underlying claim against the insured. I disagree. I conclude that "claim" refers solely to Pitco's claim against NHIGA arising from its policy with an insolvent insurer, Ideal Mutual Insurance Company (Ideal), *see Howell v. State*, 868 P.2d 568, 571-72 (Mont. 1994); *Maytag Corp. v. Tennessee Ins. Guar. Assn.*, 608 N.E.2d 772, 775 (Ohio Ct. App.), *juris. motion overruled*, 600 N.E.2d 679 (Ohio 1992), and that NHIGA is liable for defending Pitco against the Lorkowski's claims. Thus, I respectfully dissent.

The statute's references to the rights and obligations of "claimants or policyholders," RSA 404-B:2, of "the claimant or insured," RSA 404-B:5, IV(a), of the "policyholder or claimant," RSA 404-B:8, I(a), and of the "insured or claimant," RSA 404-B:11, I (1983), do not compel the conclusion that the Lorkowskis are the relevant claimants. The Lorkowskis' action against Pitco arose from a workplace injury caused by an allegedly defective product. Therefore, unlike Pitco's claim against NHIGA, the Lorkowskis' action did not arise out of a policy with an insolvent insurer. *Cf.* RSA 404-B:5, IV.

I agree with the majority that the statute plainly contemplates that "claimant" is different from "insured" or "policyholder," *Merrill v. Great Bay Disposal Serv.*, 125 N.H. 540, 543, 484 A.2d 1101, 1103 (1984); however, it does not follow that "claimant" necessarily refers to a tort victim suing an "insured" of an insolvent insurer. Insurance law permits certain persons who are neither insureds nor policyholders to maintain a claim under an insurance

policy against an insurer. *See, e.g.*, 20B J. APPLEMAN & J. APPLEMAN, INSURANCE LAW AND PRACTICE § 11749 (1980) (discussing ability of payee under loss payable clause to sue in own name to recover a loss occurring under a property insurance policy). Furthermore, my interpretation comports with the purpose of RSA chapter 404-B, "avoid[ing] financial loss to *claimants or policyholders* because of the insolvency of an insurer." RSA 404-B:2 (emphasis added); *see* RSA 404-B:4.

NHIGA contends that it has no obligation to pay Pitco as a result of Lorkowski's receipt of workers' compensation benefits, *cf.* RSA 404-B:12, I (1983), Lorkowski's failure to exhaust his rights against the insurers of Lender's Bagel, *cf. id.*, and the asserted liens of Lender's Bagel's workers' compensation insurers on Lorkowski's recovery from Pitco, *cf.* RSA 404-B:5, IV. My conclusion that the relevant "claim" is Pitco's reimbursement claim, rather than the Lorkowskis' underlying action, resolves NHIGA's contention.

Relying on RSA 404-B:12, I, NHIGA also argues that Pitco's failure to exhaust its rights against Lender's Bagel and Lender's Bagel's liability insurers in Pitco's third party action precludes reimbursement from NHIGA. I have already concluded that Pitco's claim is the relevant claim and it is undisputed that Pitco had no other available insurance to cover the Lorkowskis' claim. Although the majority does not directly address NHIGA's argument, I would hold that the rights that must be exhausted under RSA 404-B:12, I, are any rights Pitco may have against a solvent insurer "under any provision in an insurance policy," *id.*, not any legal actions that Pitco might have against a potential defendant who happens to have insurance. *See Insurance Com'r v. Prop. & Cas. Corp.*, 546 A.2d 458, 463-64 (Md. 1988); *Sands v. Pa. Ins. Guaranty Ass'n*, 423 A.2d 1224, 1227-28 (Pa. Super. Ct. 1980).

The two-part test adopted by the majority may be applicable to NHIGA's liability; however, I disagree with the conclusion that the majority reaches under step one. NHIGA agreed to defend Pitco. The majority disregards this fact, however, and concludes that NHIGA had no obligation to defend Pitco following the Lorkowskis' receipt of workers' compensation benefits. Furthermore, the statutory sections relied upon by the majority address only NHIGA's liability arising from claims, not its duty to defend. *See* RSA 404-B:12, I, :8, I(a). NHIGA, in lieu of Ideal, should defend Pitco. *Cf. Ferrari v. Toto*, 417 N.E.2d 427, 429 (Mass. 1981).

The majority also incorrectly concludes that the Lorkowskis' receipt of workers' compensation benefits in an amount greater than the statutory liability established in RSA 404-B:8, I(a), vitiates

NHIGA's obligation to indemnify Pitco. NHIGA properly points out that Pitco's policy with Ideal provided that Ideal would "pay on behalf of [Pitco] all sums which [Pitco] shall become *legally obligated to pay as damages.*" (Emphasis added.) In an analogous case involving similar insurance policy language, we stated that "[a]n insurer refusing to defend its insured undertakes the risk that the insured will settle and that it may be held liable for damages, and will not be heard to complain about the strict form of the structure of the relief afforded in the underlying case." *A.B.C. Builders v. American Mut. Ins. Co.*, 139 N.H. 745, 750, 661 A.2d 1187, 1191 (1995).

NHIGA provided counsel for Pitco in the suit filed by the Lorkowskis, but informed Pitco that it would deny coverage to the extent that Lorkowski had received workers' compensation benefits. During the course of this representation, NHIGA neither consented *nor objected* to the proposed settlement between Pitco and the Lorkowskis. We have shown little sympathy for insurers who have declined to participate in proceedings for which they ultimately were responsible, concluding that "it is fair that [the insurer] should abide by the result." *Id.* (quotation omitted). So long as a settlement reached under such circumstances results from good faith conduct by the insured and bears a reasonable relation to the potential liability of the insured in the underlying action, the insurer may not complain that it is not "legally obligated to pay." *See Mississippi Ins. Guar. Ass'n v. Byars*, 614 So. 2d 959, 964-65 (Miss. 1993); *Alvey, Inc. v. Missouri Ins. Guar. Ass'n*, 922 S.W.2d 804, 809 (Mo. Ct. App. 1996). I would remand this case to the superior court to determine whether Pitco acted in good faith in entering the settlement and, if so, whether the amount of settlement Pitco paid to the Lorkowskis was reasonable.

For the foregoing reasons, I respectfully dissent.

JOHNSON, J., joins in the dissent.