STATE OF MAINE
CUMBERLAND, ss.

STATE OF MAINE SUPERIOR COURT
CLERK CIVIL ACTION
DOCKET NO. CV-06-235

2007 MAR 21 A 11: 01

MICHAEL LEPAGE,

        Plaintiff

    v.

CHRISTINE COLLINS and
INDEPENDENT TRANSPORTATION
NETWORK,

        Defendants

ORDER ON
DEFENDANTS' MOTION
*IN LIMINE*

Before the Court is Defendant Christine Collins ("Collins") and Independent Transportation Network's ("ITN") motion *in limine* to determine the proper interpretation of the Maine Insurance Guaranty Association Act ("Act"), 24-A M.R.S.A. §§ 4431 – 4452, in regard to a potential set-off for any recovery that Plaintiff might be awarded at trial.

## BACKGROUND

This lawsuit arises out of a collision between a car driven by Collins and one driven by Plaintiff Michael LePage ("LePage"). At the time of the accident, Collins was acting within the scope of her employment with ITN. ITN carried insurance through Reliance Insurance Company ("Reliance"), with a liability limit of $1,000,000. LePage had an insurance policy through Concord with an uninsured/underinsured policy limit of $100,000. Subsequent to the accident and prior to the initiation of this lawsuit, Reliance became insolvent. As a result, Concord tendered its policy limit of $100,000 to LePage.

## DISCUSSION

1

The Act was enacted in part for the purpose of providing "a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer." 24-A M.R.S.A. § 4432. In order to carry out this purpose, the Act created the Maine Insurance Guaranty Association ("MIGA"), a nonprofit unincorporated legal entity of which insurers carrying on business in Maine must be members. 24-A M.R.S.A. § 4436. The claims paid and expenses incurred by MIGA are allocated among member insurance companies. 24-A M.R.S.A. § 4438(1)(C). MIGA, in turn, is responsible for paying "covered claims" of insolvent insurance companies in "[a]n amount not exceeding $300,000 per claim." 24-A M.R.S.A. § 4438(1)(A)(3).

A "covered claim" is defined in the Act as "an unpaid claim . . . arising under and within the coverage and applicable limits of a policy . . . to which this subchapter applies issued by an insurer that becomes an insolvent insurer . . . . " 24-A M.R.S.A. § 4435(4). There is no dispute that LePage's claim in this case is a covered claim. The present motion presents for decision only the narrow issue of the proper interpretation of the section of the Act titled "Nonduplication of recovery." 24-A M.R.S.A. § 4443.

The relevant portion of Section 4433 reads in full as follows:

> Any person having a claim against an insurer under any provision in an insurance policy, other than that of an insolvent insurer, which is also a covered claim, shall be required to exhaust first the person's right under the policy. Any amount otherwise payable on a covered claim under this subchapter shall be reduced by the amount of any recovery under the insurance policy.

24-A M.R.S.A. § 4443(1). Thus, the statute, by its first sentence, required LePage, as he did, to exhaust his uninsured motorist coverage prior to seeking recovery

from MIGA. The parties, however, contest the proper interpretation of the second sentence of Section 4443(1). Plaintiff argues that this section is designed primarily to prevent double recovery by a Plaintiff[1] and that any reduction in the amount of his claim dictated by Section 4443(1) should be charged against his unrecovered damages, not against the $300,000 cap on recovery against MIGA established by 24-A M.R.S.A. § 4438(1)(A). Under this interpretation, notwithstanding Plaintiff's recovery of $100,000 under his uninsured motorist policy, he could recover up to the full $300,000 cap if he were to secure a sufficiently large judgment at trial.

Although the heading of Section 4443 implies that a primary purpose of that section is to prevent double recovery by a plaintiff, the language of the section is not so limited. Rather, the statute simply states that any amount "otherwise payable" under the Act "shall be reduced by the amount of any recovery under the insurance policy." 24-A M.R.S.A. § 4443(1). Because 24-A M.R.S.A. § 4438(1)(A) limits potential recovery under the act to $300,000, that total is the maximum amount that is "otherwise payable" under the Act. The plain language of Section 4443(1) dictates that any amount recovered by a plaintiff under an uninsured motorist policy must be subtracted from this otherwise payable total. Therefore, LePage may recover a maximum of $200,000 from MIGA in the present case.[2]

---

[1] For example, if LePage's claimed damages in this case were $100,000, he would clearly be barred by 24-A M.R.S.A. § 4443(1) from seeking recovery for that money from MIGA after having already received $100,000 under his uninsured motorist policy.

[2] LePage is incorrect that the offset amount should be based on net recovery after attorney fees. The only support for that proposition comes from a case in which the Law Court listed the benefits a plaintiff had already recovered through workers' compensation and subtracted $5,000 in attorney fees in determining the

3

In so holding, this Court is aware of at least one contrary ruling by a court interpreting a similar statute. *See Int'l Coll. Serv. v. Vt. Prop. & Cas. Ins.*, 555 A.2d 978, 980 (Vt. 1988) (holding that any amounts recovered by a plaintiff from insurance should be subtracted from the unrecovered damages rather than the statutory cap). This Court's approach, however, is in accord with the majority of jurisdictions that have directly addressed the issue. *See e.g. N.H. Ins. Guar. Ass'n. v. Pitco Frialator, Inc.*, 705 A.2d 1190, 1194 (N.H. 1998); *Mosier v. Okla. Prop. & Cas. Guar. Ass'n.*, 890 P.2d 878, 880 (Okla. 1994). Further supporting the conclusion that the majority approach is correct, the Law Court has explained in dicta that "[a]ny amount recovered from the uninsured motorist carrier is excepted from the claim against the MIGA." *Pinkham v. Morrill*, 622 A.2d 90, 93 (Me. 1993).

Therefore, the entry is:

> 24-A M.R.S.A. § 4443 requires that LePage's recovery of $100,000 from his underinsured/uninsured motorist policy be set-off against the statutory cap of $300,000 recoverable against MIGA. As a result, Plaintiff's maximum recovery against MIGA should he prevail at trial is $200,000.
>
> The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated at Portland, Maine this 21*st* day of March , 2007.

Robert E. Crowley
Justice, Superior Court

---

total "benefits" that plaintiff received. *Ventulett v. Me. Ins. Guar. Ass'n*, 583 A.2d 1022, 1022-23 (Me. 1990). *Ventulett* simply does not address the issue of whether the amount recovered from insurance by a plaintiff should exclude attorney fees under the Act. Further, there is nothing in the statutory language of the Act itself to support LePage's contention.

4

BARRI BLOOM ESQ
RICHARDSON WHITMAN LARGE & BADGER
PO BOX 9545
PORTLAND ME 04112-9545

BENJAMIN GIDEON ESQ
BERMAN & SIMMONS
PO BOX 961
LEWISTON ME 04243-0961