OB/GYN ASSOCIATES OF SOUTHERN NEW HAMPSHIRE

v.

NEW HAMPSHIRE INSURANCE GUARANTY ASSOCIATION

Argued: June 8, 2006
Opinion Issued: December 19, 2006

*McDonough & O'Shaughnessy, P.A.*, of Manchester (*Robert J. Meagher* on the brief and orally), for the petitioner.

*Nixon Peabody LLP*, of Manchester (*John E. Friberg, Jr. & a.* on the brief, and *Mark D. Robins* orally), for the respondent.

BRODERICK, C.J. The petitioner, OB/GYN Associates of Southern New Hampshire (OB/GYN), appeals an order of the Superior Court (*Groff*, J.) granting summary judgment to the respondent, New Hampshire Insurance Guaranty Association (NHIGA), and denying its cross-motion for summary judgment. The trial court interpreted the New Hampshire Insurance Guaranty Association Act (Guaranty Act), RSA 404-B:1 *et seq.* (1998), not to require NHIGA to partially reimburse OB/GYN for the payment OB/GYN made to settle a professional negligence action against itself and one of its physicians whose professional liability insurer had become insolvent. We affirm.

I

The facts are not in dispute. While under the care of Leonard Wasserman, M.D., a physician employed by OB/GYN, Hanh Tran died of complications from childbirth. Wasserman was insured by PHICO Insurance Company (PHICO). OB/GYN was insured by Covenant Health Systems Insurance, Ltd. (Covenant).

Tran's estate sued Wasserman, OB/GYN, St. Joseph's Hospital, and another physician, Sayed Elsiah, M.D., who was not employed by OB/GYN. The estate's claims against OB/GYN were based solely upon OB/GYN's vicarious liability for Wasserman's actions. During the pendency of the suit, PHICO was declared insolvent and placed in court-ordered liquidation. Thereafter, NHIGA assumed Wasserman's defense pursuant to RSA 404-B:8, I(b). Shortly before trial, NHIGA concluded that it was not required to participate in settlement until OB/GYN had exhausted all the coverage available under its Covenant policy to satisfy the estate's claims. Ultimately, OB/GYN agreed to settle the wrongful death claims against itself and Wasserman for $500,000. Of the total settlement, $300,000 was paid on Wasserman's behalf. OB/GYN paid the settlement from its own funds and never made a claim against Covenant. In exchange for OB/GYN's payment on his behalf, Wasserman assigned his rights under his PHICO policies to OB/GYN.

OB/GYN then filed a declaratory judgment action against NHIGA, asserting it was entitled, under its assignment from Wasserman, to recover $300,000 from NHIGA, the statutory maximum NHIGA would have been obligated to pay the wrongful death plaintiff on its claims against Wasserman in the absence of other available coverage. *See* RSA

404-B:8, I(a). OB/GYN contended that NHIGA's obligation to reimburse it for the payment it made on Wasserman's behalf was triggered even though it never made a claim against its Covenant policy and used its own funds to settle the claims against itself and Wasserman.

NHIGA moved for summary judgment contending that OB/GYN was required, under RSA 404-B:12, I, to exhaust all solvent insurance available to satisfy the underlying plaintiff's claims before NHIGA's obligation to assume PHICO's obligations would be implicated. NHIGA further argued that OB/GYN's claim against it was not a "covered claim" because OB/GYN settled with the underlying plaintiff from its own funds, thus precluding the existence of an "unpaid claim," which is part of the statutory definition of a "covered claim." *See* RSA 404-B:5, IV. OB/GYN filed a cross-motion for summary judgment arguing, in part, that NHIGA breached its statutory duty to pay the claim it held under the Wasserman assignment because NHIGA's duty to participate in settlement with the underlying plaintiff did not depend upon exhaustion of the Covenant policy. The trial court granted NHIGA's motion for summary judgment and denied OB/GYN's cross-motion for summary judgment.

On appeal, OB/GYN argues that the trial court erred by ruling that: (1) NHIGA was not time-barred, under RSA 491:22, III (1997), from arguing that the Covenant policy provided coverage relieving NHIGA of any obligation to reimburse OB/GYN for the part of the settlement it paid Tran's estate on Wasserman's behalf; (2) the Covenant policy had to be exhausted before NHIGA's duty to pay on the estate's claims against Wasserman could have been triggered; and (3) there was coverage that OB/GYN failed to exhaust that was available under the Covenant policy to satisfy the estate's claims, even though OB/GYN and Covenant agreed that there was no coverage. We address each issue in turn.

II

OB/GYN first argues that the trial court erred by allowing NHIGA to litigate the construction of the Covenant policy because NHIGA's reliance on that policy in defense of OB/GYN's petition was, in effect, a request for a declaratory judgment to determine insurance coverage and was, therefore, time-barred under RSA 491:22, III. We do not agree. We review the trial court's application of the law to the facts *de novo. Tech-Built 153 v. Va. Surety Co.*, 153 N.H. 371, 373 (2006).

According to the plain language of the declaratory judgment statute, the limitation period pertains to "petition[s] . . . under this section to determine coverage of an insurance policy." RSA 491:22, III. As OB/GYN readily acknowledges, NHIGA never filed a petition for a

declaratory judgment, and the statute pertains only to petitions for declaratory judgment, not to legal arguments about insurance coverage advanced in other pleadings. *See Ryan James Realty v. Villages at Chester Condo. Assoc.*, 153 N.H. 194, 199 (2006) ("When a statute's language is plain and unambiguous . . . we will not . . . add language that the legislature did not see fit to include." (quotation omitted)); *cf. Craftsbury Co. v. Assurance Co. of America*, 149 N.H. 717, 721 (2003) (holding that parties are not collaterally estopped from litigating policy coverage issues in a subsequent action even when an earlier declaratory judgment action was dismissed as untimely). Thus, OB/GYN's characterization of NHIGA's reliance upon the Covenant policy as a "*de facto* declaratory judgment action" does not advance OB/GYN's argument. RSA 491:22, III does not apply, and NHIGA was not time-barred from asserting a defense that relied upon an interpretation of the Covenant policy. Moreover, because the declaratory judgment process is not mandatory, *see Craftsbury*, 149 N.H. at 721, NHIGA's failure to file a declaratory judgment petition is of no legal consequence.

## III

OB/GYN next argues that the trial court erred by ruling that exhaustion of the Covenant policy to satisfy the claims of the Tran estate was a necessary prerequisite to OB/GYN's right, under its assignment from Wasserman, to be reimbursed by NHIGA. Again, we disagree. We interpret the Guaranty Act by focusing first upon its language, then by considering the context of the overall statutory scheme, and finally, by looking for guidance to other states' interpretations of similar statutes. *Benson v. N.H. Ins. Guaranty Assoc.*, 151 N.H. 590, 595 (2004).

The Guaranty Act is intended, in part, "to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer . . . and to provide an association to assess the cost of such protection among insurers." RSA 404-B:2. The association established by the Guaranty Act is "a nonprofit unincorporated legal entity," RSA 404-B:6, funded by assessments from insurers, RSA 404-B:8, I(c), which insurers are authorized to recoup from premiums paid by their policyholders, RSA 404-B:16.

In a recent opinion, we described the overall statutory scheme of the Guaranty Act, characterized NHIGA as the insurer of last resort, and explained that the protection NHIGA provides is limited based upon its status as a nonprofit entity and the method by which it is funded. *Benson*, 151 N.H. at 598-99. We quoted with approval two opinions describing the operation of the California Insurance Guaranty Association:

> While CIGA's general purpose is to pay the obligations of an insolvent insurer, it is not itself an insurer and does not "stand in the shoes" of the insolvent insurer for all purposes. CIGA is *not* in the "business" of insurance .... Its "business" is providing insureds with a limited form of protection from financial loss occasioned by the insolvency of their insurer.

*Id.* at 599 (brackets and quotations omitted).

The Guaranty Act limits NHIGA's obligations in a variety of ways. For example, NHIGA will not pay "any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise." RSA 404-B:5, IV. In addition, NHIGA will provide no coverage for claims arising more than thirty days after an insurer's determination of insolvency, RSA 404-B:8, I(a), and, except in the case of an insolvent workers' compensation carrier, it will pay a maximum of $300,000 on a covered claim, *id.*

The limitation at issue in this case is contained in a section of the Guaranty Act titled "Nonduplication of Recovery," which provides, in pertinent part:

> Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, including but not limited to the provisions of uninsured motorist coverage of any policy, shall be required to exhaust first his right under such policy. Any amount payable on a covered claim under this chapter shall be reduced by the amount of any recovery under such insurance policy.

RSA 404-B:12, I. As the District of Columbia Court of Appeals explained, when interpreting a virtually identical statutory provision:

> This section requires: 1) that a claimant with an alternative source of insurance coverage for a covered claim must first exhaust that alternative source[] before seeking compensation from the DCIGA, and 2) that the DCIGA's obligation be reduced by the amount of duplicate coverage of the covered claim from alternative sources of insurance. These two clauses together provide that where an individual has more than one insurance policy that covers the same claim, the amount paid by the other policy should be deducted from the total amount payable as damages for the claimant's injuries caused by the covered occurrence. The nonduplication of recovery and exhaustion requirements prevent a situation in which an injured collects the

amount of the total loss from one insurance company and then gets an additional sum from the DCIGA. Thus, the provision prevents claimants from double recovery or windfall by virtue of an insurance company's insolvency.

*Zhou v. Jennifer Mall Restaurant, Inc.*, 699 A.2d 348, 352 (D.C. 1997) (quotations, brackets and citations omitted).

■ In *New Hampshire Insurance Guaranty Association v. Pitco Frialator*, 142 N.H. 573 (1998), we held that the term "claim" in the nonduplication of recovery provision "encompasses *both* the insured's claim against NHIGA and the third party's underlying claim against the insured." *Id.* at 578. By extension, the term "claim against an insurer" in the first sentence of RSA 404-B:12, I, necessarily encompasses both an insured's claim against a solvent insurer and the third-party claim against the insured that gives rise to the insured's claim against its solvent insurer. *See Bird v. Norpac Foods, Inc.*, 934 P.2d 382, 387 (Or. 1997) ("it is more plausible that the legislature intended that the word 'claim' refer simply to a generic assertion of a right to property or money arising out of a common injurious event"). We acknowledge that our opinion in *Pitco* could be read as implying that our decision in that case was based upon the special nature of workers' compensation insurance vis-à-vis liability insurance, but in *King-Jennings v. Liberty Mutual Insurance Co.*, 144 N.H. 559 (1999), we explained that "[a]n employer obtains workers' compensation insurance . . . in order to avoid personal liability for workers' compensation benefits that would be due to an employee who suffers a work-related injury," *id.* at 561, thus establishing that it is the employer's risk of liability for an employee's injuries rather than the employee's risk of injury that is insured by workers' compensation coverage. Accordingly, an injured employee stands no closer, legally, to his employer's solvent workers' compensation carrier than an injured patient stands to her medical provider's solvent liability carrier.

The term "covered claim" refers to a claim against an insolvent insurer to which the Guaranty Act applies. RSA 404-B:5, IV. Like the trial court, we assume without deciding that the claim against PHICO that Wasserman assigned to OB/GYN meets the statutory definition of "covered claim." Thus, the case before us involves one covered claim—the claim against PHICO that Wasserman assigned to OB/GYN—and two claims against insurers: the Tran estate's claim against Wasserman (who was covered first by PHICO, then by NHIGA) and the Tran estate's vicarious liability claim against OB/GYN (which is covered by Covenant). Under RSA 404-B:12, I, if the Tran estate's claim against OB/GYN is also the covered claim, then any insurance available to cover the claim against

OB/GYN must be exhausted before NHIGA has any obligation to cover the covered claim.

In determining whether the Tran estate's claim against OB/GYN is also the covered claim in this case, *i.e.*, Wasserman's claim against PHICO that was assigned to OB/GYN, we are mindful of our decision in *Pitco*. In that case, a bagel shop employee was injured at work and received more than $300,000 in benefits from his employer's workers' compensation carrier. *Pitco*, 142 N.H. at 574. Subsequently, the injured employee sued Pitco, manufacturer of the equipment he was using when he was injured. *Id.* During the pendency of the employee's suit against Pitco, Pitco's liability insurer was declared insolvent. *Id.* at 575. Pitco settled the suit by paying the injured bagel shop employee $500,000 of its own funds, *id.*, and then sought reimbursement of $300,000 from NHIGA, *id.*

NHIGA filed a declaratory judgment action, seeking a determination that it was not obligated to reimburse Pitco, and when the case reached us, we held that the employee's workers' compensation claim was a "claim against an insurer" as that term is used in the first sentence of RSA 404-B:12, I. *Id.* at 579. We further held, under the second sentence of RSA 404-B:12, I, that the employee's receipt of more than $300,000 in workers' compensation benefits relieved NHIGA of any obligation to reimburse Pitco. *Id.* at 580. Our resolution of *Pitco* necessarily entailed a determination that the employee's claim against his employer's workers' compensation carrier was also the covered claim, *i.e.*, Pitco's claim against its insolvent insurer to cover the employee's products liability claim.

NHIGA relies upon *Pitco* to support its argument that before it had an obligation under the Guaranty Act to contribute to a settlement with the Tran estate, or pay a claim, OB/GYN was required to exhaust its available coverage under the Covenant policy to satisfy the Tran estate's claims. According to OB/GYN, *Pitco* is no bar to its recovery from NHIGA because an injured employee's claim against his employer's workers' compensation carrier is different from the claim at issue in this case, which is a claim against a third party tortfeasor. We disagree.

The Tran estate's claim against OB/GYN is also the covered claim in this case because the only theory of liability the estate asserted against OB/GYN is vicarious liability for Wasserman's actions; no acts or omissions by OB/GYN were alleged, nor was any theory of direct liability asserted against OB/GYN. The claims against Wasserman and OB/GYN are the same because they are based upon identical factual allegations and legal assertions concerning nothing other than Wasserman's professional negligence. In other words, the Tran estate brought the same claim—that Wasserman provided negligent treatment—against two different entities each with legal responsibility for Wasserman's actions: Wasserman

himself and his employer, OB/GYN. Thus, a recovery from OB/GYN would necessarily duplicate a recovery from Wasserman. *See Zhou*, 699 A.2d at 352-53 (explaining purpose of nonduplication of recovery provision is to prevent double recovery or windfall and holding that negligence claim against drunk driver and dram shop claim against restaurant that served drunk driver were different claims, because dram shop action could not have been brought under drunk driver's insurance). Similarly, in *Pitco*, a single allegation of fault, *i.e.*, a manufacturer's fault in making and selling defective equipment, was sufficient to support two separate claims, one against the manufacturer and one against the employer whose employee was injured while using the defective equipment. In other words, the employee brought a claim that he was injured by Pitco's equipment under his employer's workers' compensation insurance. *See Zhou*, 699 A.2d at 353. Accordingly, recovery from the manufacturer would have duplicated the employee's recovery from his employer's workers' compensation insurer. As in this case, two different insurance policies were available, at least theoretically, to cover the same allegation of fault. If the employee's claims against the employer and the equipment manufacturer in *Pitco* were the same claim, for the purpose of RSA 404-B:12, I, then the two claims in this case—resting as they do on a single allegation of fault against Wasserman—are without question the same claim. Because the Tran estate's claim against OB/GYN is also the covered claim, OB/GYN's coverage under the Covenant policy must be exhausted before NHIGA has an obligation to cover Wasserman's claim against PHICO by reimbursing OB/GYN.

OB/GYN's Covenant policy has not been exhausted. It is undisputed that OB/GYN did not make a claim against that policy. According to OB/GYN, it did not make a claim and did not file a declaratory judgment action to determine the policy's coverage because it lacked a good faith belief that the policy covered the estate's claims against it. OB/GYN is not obligated to pursue insurance coverage to which it may arguably be entitled. But because OB/GYN was on notice that the source from which it intended to seek reimbursement, NHIGA, required exhaustion of available solvent insurance as a precondition to its payment on a covered claim, OB/GYN was not free to satisfy the exhaustion requirement by unilaterally conceding that it was not entitled to coverage.

Of the cases OB/GYN cites in support of its position that it was not required to exhaust the Covenant policy as a prerequisite to its right to recover from NHIGA under its assignment from Wasserman, the most relevant is *Medical Malpractice JUA of R.I. v. RIIIF*, 703 A.2d 1097 (R.I. 1997). While the Rhode Island guaranty act's nonduplication of recovery

provision is substantially similar to our statute, *compare* R.I. Gen. Laws § 27-34-12(a) *with* RSA 404-B:12, I, the facts of the Rhode Island case and our case are materially dissimilar. The Rhode Island case involved not just joint liability but also joint tortfeasors; different doctors (with different insurers), each of whom contributed to the underlying plaintiffs' injuries. *Id.* at 1098, 1099. The case before us involves joint liability, but it does not involve joint tortfeasors. OB/GYN is not alleged to have directly harmed Tran in any way; it is only alleged to be vicariously liable for Wasserman's alleged negligence. This is an important distinction—with codefendants who are joint tortfeasors, each alleged to have made its own independent contribution to a plaintiff's injury, a claim against one defendant (with solvent insurance) could not, as a logical matter, also be a covered claim, *i.e.*, a claim made against a second defendant with insolvent insurance. Because *Medical Malpractice JUA of R.I.* arose from a professional negligence action against joint tortfeasors, it does not support OB/GYN's position.

 The trial court correctly held that under the circumstances of this case, exhaustion of the Covenant policy was a prerequisite for OB/GYN's claim against NHIGA under the Wasserman assignment.

## IV

OB/GYN also contends that the trial court erred by ruling that there was coverage available under the Covenant policy. The interpretation of an insurance policy is a question of law, which we review *de novo*. *State Farm Mut. Ins. Co. v. Pitman*, 148 N.H. 499, 500 (2002).

The insurance policy Covenant issued to OB/GYN provided that Covenant would "reimburse amounts any protected person is legally required to pay as damages . . . for medical professional injury that results from health care professional services provided, or which should have been provided; by or for a protected person." The policy defined "[p]rotected person [as] any person or organization who qualifies as a protected person under the Who is Protected Under this Agreement section of this agreement." That section of the agreement established that OB/GYN was a protected person and also recited that "no intern, extern, resident, or dental, osteopathic or medical doctor is a protected person for any direct patient care that they provided or should have provided." The policy defined "[m]edical professional injury [as] injury, including death, to others that results from health care professional services provided, or which should have been provided, by or for a protected person."

OB/GYN argues that the Covenant policy provided no coverage for the estate's claims because it expressly excluded coverage for the negligence

of physicians providing direct care to patients. NHIGA concedes that Wasserman was not a protected person under the policy but contends that coverage was available because the treatment Wasserman provided, as OB/GYN's employee, was provided by or for a protected person, namely OB/GYN. We agree.

Our interpretation of the relevant policy language is governed by the following principles:

> When interpreting a written agreement, we give the language used by the parties its reasonable meaning, considering the circumstances and the context in which the agreement was negotiated, and reading the document as a whole. Absent ambiguity, however, the parties' intent will be determined from the plain meaning of the language used in the contract.

*Ryan James Realty*, 153 N.H. at 197 (quotation omitted). The question before us is straightforward: whether Wasserman's treatment of Tran was provided "by or for" OB/GYN.

It is beyond reasonable dispute that the medical services Tran received were provided "for" OB/GYN. In common usage, the meaning of the word "for" includes "in place of," "in behalf of," and "in support of." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 886 (unabridged ed. 2002). Wasserman was OB/GYN's employee. Thus, it is axiomatic that regardless of whether Wasserman was legally OB/GYN's agent or an independent contractor, he provided treatment to Tran in place of, in behalf of, or in support of OB/GYN. *Cf. Singh v. Therrien Management Corp.*, 140 N.H. 355, 358 (1995) (defining agency "as the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act" (citation and quotation omitted)); *Boissonnault v. Bristol Federated Church*, 138 N.H. 476, 477 (1994) (affirming trial court ruling that volunteer church worker "was performing services *for the Church* as an independent contractor" (quotation omitted; emphasis added)).

OB/GYN's strongest argument against the trial court's construction of the Covenant policy is that neither it nor Covenant intended for the policy to cover claims such as the estate's claim against Wasserman. However, because OB/GYN has identified no ambiguity in the policy language, we have no cause to examine the asserted intent of the parties to the policy. *See Concord Hosp. v. N.H. Medical Malpractice Joint Underwriting Assoc.*, 137 N.H. 680, 686 (1993).

## V

Because OB/GYN failed to exhaust the coverage available under the Covenant policy to satisfy the Tran estate's claims, as required by RSA 404-B:12, I, the trial court's grant of summary judgment in favor of NHIGA is affirmed.

*Affirmed.*

DALIANIS, DUGGAN, GALWAY and HICKS, JJ., concurred.