Hillsborough-northern judicial district
No. 2005-834

## NEW HAMPSHIRE INSURANCE GUARANTY ASSOCIATION

### v.

### ELLIOT HOSPITAL

Argued: June 8, 2006
Opinion Issued: December 20, 2006

*Nixon Peabody LLP*, of Manchester, (*John E. Friberg, Jr. & a.* on the brief, and *Mark D. Robins* orally), for the petitioner.

*Wiggin & Nourie, P.A.*, of Manchester (*Gary M. Burt* on the brief and orally), for the respondent.

*Morrison Mahoney LLP*, of Boston, Massachusetts (*Michael F. Aylward* on the brief), for New Hampshire Medical Malpractice Joint Underwriting Association and ProMutual Insurance Group, as *amici curiae*.

DUGGAN, J. The petitioner, New Hampshire Insurance Guaranty Association (NHIGA), appeals a decision of the Superior Court (*Barry*, J.) granting summary judgment to the respondent, Elliot Hospital (Elliot), and denying NHIGA's cross-motion for summary judgment. The trial court interpreted the New Hampshire Insurance Guaranty Association Act (Guaranty Act), RSA chapter 404-B (1998), not to require the plaintiffs in an underlying medical malpractice action to exhaust claims against a codefendant's solvent insurer before proceeding against NHIGA. We affirm.

The record reflects the following facts. On October 7, 1999, Dahlia Reid gave birth to Chukwuemeka Okongwu at Elliot Hospital. The Dartmouth-Hitchcock Clinic and Hitchcock Clinic, Inc. (collectively, Hitchcock) managed Reid's pregnancy, labor and delivery. During the delivery, Chukwuemeka suffered significant injuries, including brain damage.

Following Chukwuemeka's birth, Reid and Jonathan Okongwu, the child's father (collectively, the malpractice plaintiffs), filed two writs: one against Elliot and one against Hitchcock. In count I of the writ in their suit

against Elliot, the malpractice plaintiffs alleged that Elliot, through its agents and employees:

> among other things, failed to properly monitor Dahlia Reid and her child during labor; failed to recognize and respond to signs of fetal stress during labor; failed to timely notify and arrange for newborn resuscitation personnel to attend the delivery; failed to properly anticipate and plan for a difficult birth and a compromised infant; failed to timely and appropriately resuscitate Chukwuemeka Okongwu; and otherwise failed to appropriately manage the labor, delivery and newborn resuscitation.

In count I of the writ in their suit against Hitchcock, the malpractice plaintiffs alleged that Hitchcock, through its agents and employees, "among other things, failed to properly monitor, evaluate, and manage Dahlia Reid and her child during the pregnancy, labor, and delivery; failed to properly manage and resuscitate Chukwuemeka Okongwu after delivery; and otherwise failed to properly manage Dahlia Reid and Chukwuemeka Okongwu." The cases against Elliot and Hitchcock were consolidated for discovery and trial. Thus, Hitchcock and Elliot are technically codefendants, but they have never been treated as joint tortfeasors in the malpractice plaintiffs' pleadings.

At the time of Chukwuemeka's birth, Elliot carried a primary and excess insurance policy with PHICO Insurance Company (PHICO). Hitchcock was insured by Lexington Insurance Company (Lexington), under both a primary and an excess policy. Hitchcock's Lexington policies provided no coverage for Elliot or its agents or employees.

PHICO was declared insolvent after the malpractice plaintiffs filed their writs. PHICO's insolvency triggered the obligation of NHIGA to undertake certain statutory duties to defend Elliot and provide coverage under the insurance policy issued by PHICO to Elliot. *See* RSA ch. 404-B.

Before trial of the claims against Elliot and Hitchcock, NHIGA petitioned the superior court for a declaration that: (1) neither it nor Elliot was liable to the malpractice plaintiffs because the malpractice plaintiffs had not exhausted their rights under Hitchcock's Lexington policies, as required by RSA 404-B:12, I; (2) any amount payable by NHIGA must be reduced by any amount the malpractice plaintiffs may recover under the Lexington policies; and (3) any amount recoverable from Elliot must be reduced by any amount the malpractice plaintiffs may recover under the Lexington policies. Elliot and NHIGA filed cross-motions for summary judgment. Elliot contended that the malpractice plaintiffs were not obligated to exhaust their rights against Lexington because, among other

things: (1) RSA 404-B:12, I, only requires exhaustion of claims against insurers, and the malpractice plaintiffs, as third parties to Hitchcock's Lexington policies, have no claim of their own against Lexington; and (2) presuming that the malpractice plaintiffs' claim against Hitchcock qualifies as a claim against an insurer, the claim against Hitchcock is different from the claim against Elliot, and RSA 404-B:12, I, only requires exhaustion when a claim against a solvent insurer is the same claim asserted against the insolvent insurer. NHIGA argued that: (1) the malpractice plaintiffs' claim against Hitchcock was a claim against an insurer; and (2) if Hitchcock were to be found at least fifty percent at fault for the malpractice plaintiffs' injuries, it would be jointly liable for the entire judgment, making the claim against Hitchcock the covered claim. The trial court granted Elliot's motion for summary judgment and denied NHIGA's cross-motion for summary judgment. This appeal followed.

On appeal, NHIGA argues that the trial court erred by ruling that: (1) the exhaustion and offsetting requirements of RSA 404-B:12, I, are limited to those with first-party claims against solvent insurers; and (2) it was premature to consider, prior to trial, NHIGA's argument that a judgment in the underlying case assigning at least fifty percent of the liability to Hitchcock would make the claim against Hitchcock the covered claim.

In reviewing the superior court's summary judgment rulings, we consider the evidence in the light most favorable to each party in its capacity as the non-moving party and, if no genuine issue of material fact exists, we determine whether the moving party is entitled to judgment as a matter of law. *N.H. Ins. Guaranty Assoc. v. Pitco Frialator*, 142 N.H. 573, 576 (1998).

In *OB/GYN Associates of Southern New Hampshire v. New Hampshire Insurance Guaranty Assoc.*, 154 N.H. 553 (2006), we described the purpose and functions of NHIGA and explained that we interpret the Guaranty Act by focusing first upon its language, then by considering the context of the overall statutory scheme, and finally, by looking for guidance to other states' interpretations of similar statutes. *See also Benson v. N.H. Ins. Guaranty Assoc.*, 151 N.H. 590, 595 (2004). At issue in this case is RSA 404-B:12, I, which provides, in pertinent part:

> Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim ... shall be required to exhaust first his right under such policy. Any amount payable on a covered claim under this chapter shall be reduced by the amount of any recovery under such insurance policy.

In NHIGA's view, the trial court incorrectly determined that the malpractice plaintiffs' claim against Hitchcock was not a claim against an insurer, for the purpose of RSA 404-B:12, I, and incorrectly failed to address, and accept, its argument that the claim against Hitchcock was a covered claim. We agree in part, and disagree in part.

■ First, we agree with NHIGA that the malpractice plaintiffs' claim against Hitchcock was a claim against an insurer. In *Pitco*, we held that "'claim' encompasses *both* the insured's claim against NHIGA and the third party's underlying claim against the insured," *Pitco*, 142 N.H. at 578, and in *OB/GYN* we held that the term "claim against an insurer" in the first sentence of RSA 404-B:12, I, necessarily encompasses both: (1) an insured's claim against a solvent insurer; and (2) the third-party claim against the insured that gives rise to the insured's claim against its solvent insurer, *OB/GYN*, 154 N.H. at 558. Thus, the malpractice plaintiffs' claim against Hitchcock was also a claim against an insurer, for purposes of RSA 404-B:12, I.

The trial court relied upon our decision in *Burke v. Fireman's Fund Insurance Co.*, 120 N.H. 365 (1980), *not followed on other grounds by Gould v. Concord Hospital*, 126 N.H. 405, 409 (1985), in which we held that an injured party did not have a direct cause of action against the insurance company of the person who injured him, *id.* at 366. We are not holding here that the malpractice plaintiffs had a direct cause of action against Hitchcock's solvent insurer, but only that the malpractice plaintiffs' claim against Hitchcock was a claim against an insurer for the purpose of RSA 404-B:12, I. Accordingly, *Burke* did not address the issue that faces us in this case.

Because the trial court determined that the malpractice plaintiffs' claim against Hitchcock was not a claim against an insurer, it never had to determine whether that claim was also a "covered claim," which is the second prerequisite to the applicability of the exhaustion requirement. *See* RSA 404-B:12, I. Since we hold that the claim against Hitchcock was a claim against an insurer, however, we must take the next step and determine whether that claim was also a covered claim. The term

> "[c]overed claim" means a net unpaid claim . . . including one for unearned premiums, which arises out of and is within coverage and not in excess of the applicable limits of an insurance policy to which this chapter applies issued by an insurer, if such insurer after the effective date of this chapter is declared insolvent . . . .

RSA 404-B:5, IV.

In *Oglesby v. Liberty Mutual Insurance Co.*, 832 P.2d 834 (Okla. 1992), which we cited with approval in *Pitco*, 142 N.H. at 579, the Oklahoma Supreme Court held that under the Oklahoma cognate to RSA 404-B:12, I, a claim that was also a covered claim did not have to be a claim against an insolvent insurer, *see Oglesby*, 832 P.2d at 843. But *Oglesby* simply stated the obvious; it would be absurd for the nonduplication of recovery provision to require exhaustion from a source that had nothing to give. *Id.* Moreover, because the "other than" clause in RSA 404-B:12, I, is worded slightly differently than the "other than" clause in the Oklahoma version of the statute, excepting "a policy of *an* insolvent insurer," RSA 404-B:12, I (emphasis added), rather than "a policy of *the* insolvent insurer," *Oglesby*, 832 P.2d at 843 (emphasis added), the holding of *Oglesby* is, for all intents and purposes, already incorporated into our statute. Thus, the fact that Lexington is not insolvent is no bar to determining that the malpractice plaintiffs' claim against Hitchcock is also a covered claim.

More useful guidance on the question before us comes from *Zhou v. Jennifer Mall Restaurant, Inc.*, 699 A.2d 348 (D.C. 1997). In that case, Rong Yao Zhou and Xiu Jan Wu (the Zhous), were involved in an automobile accident with a drunk driver. *Id.* at 349-50. The Zhous settled with the insurer of the drunk driver and also sued the restaurant that had served him alcohol prior to the accident. *Id.* at 350. The restaurant's insurer became insolvent, and the District of Columbia Insurance Guaranty Association (DCIGA) assumed the insurer's obligations. *Id.* DCIGA argued that under the District of Columbia cognate to RSA 404-B:12, I, it was entitled to offset the amount the Zhous received from the insurer of the drunk driver against the amount it was obligated to pay the Zhous on behalf of the restaurant's insolvent insurer. *Id.* The District of Columbia Court of Appeals rejected that argument, explaining:

> [T]he Zhous' claim against the drunk driver cannot be a "covered claim" because it could not have "arisen out of" or come "within the coverage of" [the restaurant's] insurance policy. The Zhous' claim against [the restaurant] is different from their claim against the drunk driver. *Zhou* [*v. Jennifer Mall Restaurant, Inc.*, 534 A.2d 1268 (D.C. 1987)], held that "the unexcused violation by a tavern keeper of D.C.Code § 25-121(b) (1981), by serving a person already intoxicated or apparently intoxicated, renders the tavern keeper negligent *per se*, and that where injuries are proximately caused to a member of the public by that violation the tavern keeper may be liable in damages." 534 A.2d at 1276. The claim against the drunk driver was based on the driver's negligent conduct, independent of [the restaurant's]

violation of D.C.Code § 25-121. Because the Zhous could not have brought their claim against [the restaurant] under the drunk driver's insurance, the Zhous' claim against the drunk driver's insurance is not a "covered claim," subject to the nonduplication limitations of § 35-1910.

*Id.* at 353.

■ While the two claims in this case, against Hitchcock and Elliot, are both for medical negligence, and may even relate to the same loss, *see id.* (distinguishing between "claims" and "losses"), they are not the same claims. In their suit against Hitchcock, the malpractice plaintiffs accused Hitchcock's agents and employees of negligent pre-natal care as well as negligence during and after Reid's delivery, while in their suit against Elliot, the malpractice plaintiffs accused Elliot's agents and employees only of negligence during and after Reid's delivery. Plainly, there is some overlap—both Hitchcock and Elliot were charged with negligence during and after Reid's delivery—but Hitchcock alone was charged with negligent pre-natal care. Any recovery the malpractice plaintiffs might receive from Hitchcock for negligent pre-natal care could not possibly duplicate a recovery from Elliot for negligence during and after delivery. *See Zhou,* 699 A.2d at 352 (explaining purpose of nonduplication of recovery provision to prevent double recovery or windfall). Moreover, as there is no allegation that Hitchcock bore any legal responsibility for the actions of Elliot's agents and employees, a recovery from Hitchcock for its negligence during and after delivery could not duplicate a recovery for the negligence of Elliot's agents and employees. Because the malpractice plaintiffs could not have brought their claim against Elliot under Hitchcock's insurance, their claim against Hitchcock is not a covered claim. *See Zhou,* 699 A.2d at 353.

That determination stands in contrast to our decision in *OB/GYN.* There, the medical malpractice plaintiff brought a claim against a physician with insolvent insurance and also brought a claim against the physician's employer, under a theory of vicarious liability. *OB/GYN,* 154 N.H. at 554. Under those circumstances, the claim against the employer was also the covered claim, because both claims were based upon the same allegation of fault. *Id.* at 559-60. Thus, the underlying plaintiff in *OB/GYN* did bring its claim against the physician under the physician's employer's insurance, *see Zhou,* 699 A.2d at 353, much the way the employee in *Pitco* brought a claim that he was injured by a piece of defective equipment under his employer's workers' compensation insurance. This case is different from *OB/GYN* and *Pitco,* because those cases each involved a single allegation of fault asserted against two entities with legal responsibility for the resulting injuries, while this case involves two

separate allegations of fault that, potentially, contributed to the same harm.

NHIGA argues that under New Hampshire's statutory rules governing joint and several liability, the malpractice plaintiffs' claim against Elliot would also be a claim against Hitchcock if Hitchcock were found to be at least fifty percent responsible for the malpractice plaintiffs' injuries. We do not agree.

■ NHIGA correctly points out that under RSA 507:7-e, I(b) (1997), a defendant that is fifty percent or more at fault for a plaintiff's damages is subject to joint and several liability. In NHIGA's view, if the malpractice plaintiffs were to go to trial against Hitchcock, and if Hitchcock were found to be fifty percent or more at fault for the malpractice plaintiffs' injuries, then Hitchcock's joint liability for the entire judgment would make the malpractice plaintiffs' claim against Elliot a claim against Hitchcock, subject to RSA 404-B:12, I. NHIGA ascribes too much power to RSA 507:7-e, I(b). While that statute potentially provides an alternative avenue for recovering on a claim against Elliot, it does not transform a claim against Elliot into a claim against Hitchcock. RSA 404-B:12, I, applies when a claim against a solvent insurer is also a covered claim, *i.e.*, a claim against an insolvent insurer, but the statute says nothing about the situation, posited by NHIGA, where a solvent insurer could be called upon, under the rules of joint and several liability, to pay damages arising out of a claim against an insolvent insurer. The legislature could have provided for that situation, but it did not, and we will not add a provision to RSA 404-B:12, I, that the legislature did not see fit to include. *See Appeal of Town of Nottingham*, 153 N.H. 539, 546 (2006) ("It is not the function of this court to add provisions to the statute that the legislature did not see fit to include." (citation omitted)).

Because the malpractice plaintiffs' claim against Hitchcock was not also the covered claim in this case, *i.e.*, the claim against Elliot, we uphold the superior court's order requiring NHIGA to undertake its statutory obligations to Elliot.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, J., concurred.